**SO ORDERED.**

**SIGNED this 04 day of August, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| STEVEN D. KLINGERMAN | 07-02455-5-ATS |
| DEBTOR | |
| | |
| STEVEN D. KLINGERMAN | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | S-08-00017-5-AP |
| EXECUCORP, LLC and BRADLEY E. PARKER, Individually and as Member-Manager of ExecuCorp, LLC | |
| Defendants. | |

**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**

The matters before the court are the cross-motions for summary judgment filed by the plaintiff, Steven D. Klingerman, and the defendant, Bradley E. Parker. A hearing took place in Raleigh, North Carolina on July 30, 2009.

Mr. Klingerman filed a petition for relief under chapter 11 of the Bankruptcy Code on October 30, 2007, and on February 11, 2008, he filed the complaint in this adversary proceeding to

dissolve ExecuCorp, LLC, a limited liability corporation Mr. Klingerman owns with Mr. Parker, and to recover damages from Mr. Parker for breach of fiduciary duty and for unfair and deceptive trade practices. Both parties contend that this adversary proceeding should be resolved on undisputed facts. The court agrees, and will grant summary judgment in favor of the plaintiff with respect to the dissolution of ExecuCorp and will grant summary judgment in favor of Mr. Parker with respect to the claims of breach of fiduciary duty and unfair and deceptive trade practices.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O), which this court may hear and determine.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has

established his right to a judgment with such clarity as to leave no room for controversy." <u>Portis v. Folk Constr. Co.</u>, 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

The parties and the issues in this adversary proceeding are well known to the court. The primary focus of Mr. Klingerman's chapter 11 case has been his relationship with Mr. Parker and Mr. Klingerman's contention that the two cannot get along, that their business relationship has come to a stalemate, and that Mr. Parker has taken advantage of him. Mr. Klingerman wants the business to be liquidated and to receive a distribution of 50% of the corporate assets.

Mr. Parker maintains that Mr. Klingerman abandoned the business and left him to run ExecuCorp. According to Mr. Parker, the business is running well and there is no reason to dissolve ExecuCorp. Mr. Parker also asserts that Mr. Klingerman is only entitled to one third of the corporate assets, and Mr. Parker argues that he has done nothing improper in managing ExecuCorp.

The court has heard both sides of this story many times. At the confirmation hearing held a year ago, the court heard extensive testimony from both parties and concluded that it was likely that Mr. Klingerman would prevail in the adversary proceeding and that it was probable that ExecuCorp would be liquidated. The parties have supported their cross-motions for summary judgment with affidavits, Rule 2004 examination testimony, written correspondence, e-mail correspondence, tax returns, utility bills, real estate documents, requests for admissions, and numerous other documents. Although the submissions are voluminous, there is really nothing new except the positive development that Mr. Parker has obtained a tenant for all of the building that is ExecuCorp's primary asset. That advantageous lease is good news, but it does not change the impasse between the parties.

The court's Order Regarding Confirmation of Plan entered on August 6, 2008, included the following observations, findings and conclusions of the court:

The debtor maintains that dissolution should be required pursuant to North Carolina General Statute § 57C-6-02, which provides that

> The superior court may dissolve a limited liability company in a proceeding by the following:
>
> * * *
>
> (2) A member if it is established that (i) the managers, directors, or any other persons in control of the limited liability company are deadlocked in the management of the affairs of the limited liability company, the members are unable to break the deadlock, and irreparable injury to the limited liability company is threatened or being suffered, or the business and affairs of the limited liability company can no longer be conducted to the advantage of the members generally, because of the deadlock, (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining member, (iii) the assets of the limited liability company are being misapplied or wasted; or (iv) the articles of organization or a written operating agreement entitles the complaining member to dissolution of the limited liability company [.]
>
> * * *

N.C. Gen. Stat. § 57C-6-02(2). According to Mr. Klingerman, he and Mr. Parker are deadlocked with respect to the future of ExecuCorp, and the result of the deadlock is that the LLC is not being operated to the members' advantage, and is specifically being operated to the disadvantage of the debtor.

ExecuCorp is a North Carolina limited liability company that essentially has one asset, a unique building in downtown Raleigh, North Carolina. The building has two levels, a street level with large garage doors, and a basement. In 1997, Mr. Parker was interested in buying the building for use in his limousine business and asked his good friend Mr. Klingerman, who was in the construction business, to take a look at the building. Mr. Klingerman apparently liked what he saw and proposed

that he and Mr. Parker buy the building together. It was Mr. Klingerman's idea that Mr. Parker could use the first floor and the debtor could use the basement for his construction/remodeling business. The Klingerman/Parker partnership took the form of a limited liability company under the North Carolina Limited Liability Company Act. The limited liability company was named ExecuCorp LLC, and that entity purchased the building.

ExecuCorp's articles of organization were filed with the North Carolina Secretary of State on September 11, 1997, and provided that "all of the members by virtue of their status as members shall be managers of this limited liability company." (Ex. 1, Articles of Organization). Mr. Parker and Mr. Klingerman were the two organizers of ExecuCorp, and they were the member-managers. Mr. Klingerman and Mr. Parker also executed an Operating Agreement for ExecuCorp. (Ex. 2). The Operating Agreement is 25 pages long, but contains mostly boilerplate provisions that do not address the problems that arise when the two equal managers have a falling out and cannot agree on how to run the corporation. Although the essence of the arrangement between the two is that Mr. Klingerman would have the use of the basement and Mr. Parker would have the use of the first floor, there is no written agreement that memorializes that understanding. The terms and conditions of occupancy were not reduced to writing and no written agreement spells out what happens if a member does not pay his share of the expenses.

The parties also did not appear to observe any of the corporate formalities, and in some instances ignored basic corporate requirements. For example, Mr.

Parker maintained a bank account in ExecuCorp's name, but considered the funds in the account to be his funds and treated the account as his personal checking account. At one point Mr. Klingerman tried to sell the basement space, which, of course, could only be sold by the owner of the building, ExecuCorp.[1]

For the first few years the lack of written leases and the absence of corporate observances did not seem to matter as long as Mr. Klingerman and Mr. Parker were friends. Each owner occupied his respective floor of the building and paid his equal share of the expenses. In 2002, Mr. Klingerman, who was having both financial and marital problems, vacated his part of the building and moved to Oregon. Nevertheless, he continued to pay his part of the ExecuCorp expenses. Sometimes the payments were very late, but he was current with his obligations until Mr. Parker advised him of his position that if the building was ever sold, Mr. Klingerman would be entitled to only a third of the proceeds. Mr. Parker based that assessment on the fact that the value of Mr. Klingerman's portion of the building was only worth a third of the total. However, there is nothing in the Articles of Organization or the Operating Agreement that would support anything other than a 50-50 allocation. The Operating Agreement clearly provides that Mr. Klingerman's ownership interest, as stated in Schedule A of the Operating Agreement, shall be 50%. (Ex. 2, p. 3). Other provisions of the Operating Agreement also corroborate Mr. Klingerman's 50% ownership interest. See Ex. 2, Operating Agreement, §§ 7.06 (p. 11), 9.03 (p. 14),

---

[1] It is doubtful that even ExecuCorp could sell a portion of the building without a condominium or similar regime that allows unit ownership within a single structure.

9.04 (p. 15), 10.01 (p. 15), and 13.03(b)(4) (p. 20). The equal ownership of Mr. Klingerman and Mr. Parker is also reflected in ExecuCorp's tax returns for years 1997 through 2006. (Exs. 5 to 14). For purposes of § 57C-6-02(2), this dispute regarding Mr. Klingerman's ownership constitutes a deadlock in management.

    Although the disagreement over Mr. Klingerman's ownership interest appears to be the primary source of the deadlock, there are others as well. The Operating Agreement gives each member an equal say in how the limited liability corporation should be run. Section 5.01 of the Operating Agreement provides that "[t]he business and affairs of the Company shall be managed by its Managers." (Ex. 2, p. 6). Section 5.04(g) provides that it takes the written approval of two members to execute documents including checks and drafts. (Ex. 2, p. 7). The Operating Agreement requires both parties to agree with respect to a sale of the property, and that presents a problem for Mr. Klingerman because he wants to sell the property and Mr. Parker does not. See Operating Agreement § 504(f) (two members approval needed to dispose of substantially all assets) and §7.05 (51% vote needed to sell substantially all of assets) (Ex. 2, pp. 7, 11).

    Mr. Klingerman would like to sell his interest in ExecuCorp, but even that, pursuant to §12.02 of the Operating Agreement, requires Mr. Parker's consent. (Ex. 2, pp. 17-18). Another source of disagreement is Mr. Parker's imposition of a $500 monthly management fee. It is true that Mr. Klingerman vacated the building and left the management to Mr. Parker, but the arbitrary $500 fee seems excessive.

> Furthermore, Mr. Parker has precluded Mr. Klingerman from having unsupervised access to the building.
>
> The court's findings and conclusions are supported by the scant North Carolina case law on the subject. Ellis v. Civic Improvement, Inc., 24 N.C. App. 42, 209 S.E. 2d 873 (1974) (dissolution of a corporation that had one asset, an office building, was warranted because of a voting deadlock between the two doctors who were the corporation's sole owners).
>
> A finding that there is a deadlock that is detrimental to the business, however, does not mean that the court will necessarily order the limited liability corporation to be dissolved. "[W]hether to grant dissolution is within the trial court's discretion even though grounds for dissolution are found to exist under the statute." Foster v. Foster Farms, Inc., 112 N.C. App. 700, 760, 436 S.E. 2d 843, 847 (1993). In a proceeding to dissolve a limited liability corporation, the court has broad authority to "take other action required to preserve the assets of the limited liability company, wherever located, and carry on the business of the limited liability company." N.C. Gen. Stat. § 57C-6-02.1(c). Pursuant to this authority, the court could revise the terms of the Operating Agreement to address those issues that should have been addressed when ExecuCorp was formed. Judicial intervention in the affairs of the corporation, however, should be a last resort, and it would be preferable if Mr. Klingerman and Mr. Parker could set their personal animosity aside and resolve their differences themselves.

Order Regarding Confirmation of Plan, Aug. 6, 2008, at 3-7.

Mr. Klingerman and Mr. Parker were two friends who had an unwritten understanding of their business relationship, but the vehicle they used to further that relationship, ExecuCorp and an Operating Agreement, did not reflect what they intended. They did not anticipate that their friendship would end, but that is what happened. Their personal and business relationship turned from one of cooperation to one of dysfunction. The record in this adversary proceeding and in this case is replete with examples of their incompatibility. Mr. Klingerman and Mr. Parker cannot seem to agree on anything, and that is why ExecuCorp should be dissolved. When the mutual purpose of the venture, for Mr. Klingerman and Mr. Parker to run their businesses on separate floors of the ExecuCorp building, ended, the reason for ExecuCorp ended as well. Unfortunately, the documents do not provide for that eventuality, and Mr. Klingerman and Mr. Parker are at an impasse as to how to proceed.

If Mr. Klingerman and Mr. Parker were the only parties involved, it would be easy for the court to stay out of this conflict and to leave them to work out their predicament. But, when Mr. Klingerman filed for chapter 11 relief, the rights of others – Mr. Klingerman's creditors and particularly his ex-wife who claims an entitlement to his interest in ExecuCorp – became implicated as well. The failings of the corporate documents and the uncertainty of each corporate member's rights are obstacles that make the sale of either Mr. Klingerman's or Mr. Parker's interests to a third party highly unlikely. Another obstacle is Mr. Parker's adamant belief, in spite of the court's ruling to the contrary, that he is entitled to a two thirds share, rather than a one half interest, in the sale of ExecuCorp.

There are many possible ways the court can think of to resolve this conflict, and the court could act within its equitable authority to fashion relief short of dissolving ExecuCorp; however, the

court does not know the consequences that may result to the parties from a more creative solution, and the most direct way to solve the impasse is to dissolve the corporation.

The court will in 10 days appoint a receiver to liquidate ExecuCorp. The receiver shall be entitled to compensation from the proceeds arising from the liquidation. If the bankruptcy administrator has a recommendation as to who to appoint, her recommendation would be gladly received.

Finally, summary judgment will be granted in favor of Mr. Parker on the last two counts. The undisputed evidence does not support a finding of a breach of fiduciary duty. Mr. Klingerman left the state and left the responsibility of running the corporation to Mr. Parker. As previously stated, corporate formalities were not always observed, and if Mr. Parker applied any of the corporate funds for his personal benefit, that can be sorted out by the receiver. Without a finding of breach of fiduciary duty, there is no evidence on which to base a claim of unfair and deceptive trade practices.

A separate judgment will be entered.

**SO ORDERED.**

**END OF DOCUMENT**